# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

ROSETTE, INC. et al.,

        Plaintiffs,

v.                                             No. CIV 93-1379 BB/JHG

UNITED STATES OF AMERICA,
et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' MOTIONS TO DISMISS
## AND FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint in Part [#79] and Defendants' Motion for Partial Summary Judgment as to Counterclaim [#84]. The Court has considered the briefs of counsel, and FINDS the motion to dismiss will be Granted and the motion for summary judgment will be Granted in Part and Denied in Part.

I.      Motion to Dismiss

Plaintiffs' Amended Complaint seeks, *inter alia*, a declaratory judgment and injunctive relief to deny the Bureau of Land Management ("BLM") jurisdictional authority over "plugging and abandoning" Plaintiffs' wells. (Compl. ¶ 20). This

count fails to state a claim since it does not assert any existing controversy between the BLM and Plaintiffs or the State of New Mexico, which Plaintiffs contend has the legitimate authority, over plugging or abandonment of any of Plaintiffs' wells. Article III of the United States Constitution limits the jurisdiction of the courts to actual "cases or controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990); *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1478 (10th Cir. 1984) (Article III admonishes against courts issuing advisory opinion on abstract questions).

The remedy of declaratory judgment should also be carefully applied only to actual controversies when "... the facts alleged, under all the circumstances, show that there is a substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Schepp v. Fremont County*, 900 F.2d 1448, 1452 (10th Cir. 1990), quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Weinstein v. Bradford*, 423 U.S. 147, 148 (1975); *Beattie v. United States*, 949 F.2d 1092, 1093-94 (10th Cir. 1991). The mere possibility that a conflict might arise someday between the BLM and the State of New Mexico over the plugging and abandonment of one of Plaintiffs' wells is not sufficient to meet this test, and the claim must therefore be dismissed

for lack of jurisdiction under Article III.  Defendants' motion to dismiss will therefore be granted.[1]

II.   Motion for Partial Summary Judgment as to Counterclaim

Defendants' counterclaim against Plaintiffs seeks three types of relief: 1) to recover unpaid royalties on the geothermal resources, 2) to enjoin Plaintiffs from further use of the geothermal resources unless they post a $50,000 bond, and 3) to direct Plaintiffs to maintain the flow meter in fully operable condition.  *See* Defs.' Counterclaim, filed Sept. 1, 1996, ¶ 1.  The Court will set forth the pertinent undisputed facts as it considers each claim.

A.   Royalties

1.   Facts

In 1979, the BLM issued a geothermal lease to Amax.  Thereafter, Burgett Investments, Inc., was formally designated as an operator under the lease.  AR, pp. 49-53, 67-68.  The BLM lease provides for the payment of a "royalty of 10 percent on the amount or value of steam, or any other form of heat or other associated energy produced, processed, removed, sold, or utilized from this lease ...." AR, p. 52.  Under 30 C.F.R. § 206.355(d)(1), the alternate fuel method may

---

[1] Because there is no case or controversy presently pending, the Court will decline Defendants' invitation to apply the statute of limitations rationale of its May 16, 1996, memorandum opinion.

be used to compute the value of the steam and has been used historically to calculate value for royalty purposes under this lease.

On June 8, 1993, Plaintiffs proposed the use of natural gas as the alternate fuel for valuation purposes, using Gas Company of New Mexico's combined rates for cost of service and cost of gas. Later in June, Plaintiffs modified this proposal to use El Paso Gas Company's San Juan Basin spot gas price with an adjustment for transportation. On April 15, 1994, the Mineral Management Service accepted Plaintiffs' initial proposal to use Gas Company of New Mexico's rates but rejected the modified proposal to use San Juan Basin spot gas prices.

2.  Discussion

Defendants concede that the amount of unpaid royalties is disputed but assert that they are entitled to summary judgment as to the other issues raised by Defendants' Counterclaim and Plaintiffs' Answer to Defendants' Counterclaim, including the methodology for valuing the geothermal resources used. Plaintiffs, on the other hand, maintain that "[t]he value of direct utilization of geothermal resources that are not sold, or do not have an acceptable sales price, is the value of the least expensive, reasonable alternative fuel." 30 C.F.R. § 206.355(C)(ii) and (d)(ii). Therefore, they reason that if Defendants will not accept their El Paso

4

spot price, it should revert to the price of coal at the mine mouth which Plaintiffs argue the BLM used since 1983 as the "least expensive, reasonable alternative."

The applicable legal standard, i.e., "the least expensive, reasonable alternative," bespeaks issues of material fact on its face. When, as here, both sides contend for different measures of what is "least expensive" and still "reasonable," summary judgment is not appropriate. *Jones v. Nelson*, 484 F.2d 1165 (10th Cir. 1973) (if there is issue of material fact, matter is not ripe for summary judgment).

    B.    <u>Bonding</u>

        1.    <u>Facts</u>

The BLM lease requires Plaintiffs "... to furnish such additional bonds or security as may be required by the Lessor [BLM} upon entry on the lands or after operations and production have begun." AR 52, ¶ 5. Plaintiffs presently have a $30,000 bond on file with the BLM. In a decision dated March 9, 1993, the BLM required Plaintiffs to post a $50,000 bond. The BLM provided Plaintiffs with information on how the bond was calculated in a letter dated March 31, 1993. Plaintiffs protested the decision. The BLM rejected Plaintiffs' protest.

On June 1, 1993, Plaintiffs appealed the BLM decision to the Interior Board of Land Appeals. Plaintiffs filed a Statement of Reasons in support of their appeal

on July 1, 1993. The Interior Board of Land Appeals issued its opinion affirming the BLM decision on July 15, 1996.

    2.    Discussion

In reviewing the BLM's bonding decision, this Court uses the arbitrary and capricious standard to ascertain whether the BLM examined the relevant data and articulated a rational connection between the facts found and the decision made. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994). Agency action will be set aside only if the agency entirely failed to consider an important factual aspect of the problem or its explanation for the decision runs counter to the evidence before the agency. *Id.*

The BLM apparently based its decision for a $50,000 bond on the plugging and abandonment of 15 wells at $3,500 per well. AR 519. The Stipulated Facts set forth that only 5 wells are used for heating Plaintiffs' greenhouses. Stipulated Facts ¶ 14. Moreover, Plaintiffs maintain $3,500 is an exaggerated plugging cost. The purpose of the bond, however, is not just to pay the plugging expenses, but to fully protect the public's interest in the operator's compliance with all the lease terms. 43 C.F.R. Subpart 3206; 30 U.S.C. § 1023(f). In affirming the BLM decision, the Interior Board of Land Appeals noted that the size of the bond was justified by Plaintiff Burgett's

> "refusal to file the required plans, applications, and reports and his refusal to enumerate and identify geothermal wells on the lease. ... These deficiencies have prevented BLM from more definitively estimating its potential liability for Burgett's activities on the lease and from authoritatively assessing the amount necessary to insure Burgett's full compliance with the terms and conditions of the geothermal lease, the ultimate goal of the bonding requirement.

AR 1153.

Although the bond may be higher than the potential plugging cost of the current wells, then, the BLM is not restricted to the exact cost of plugging[2] in determining the appropriate amount of the bond. Based on the current record, this Court cannot say the $50,000 bond requirement is arbitrary or capricious. *See Colorado Health Care Ass'n v. Colorado Dept. of Social Serv.*, 842 F.2d 1158 (10th Cir. 1988).

    C.    <u>Metering</u>

        1.    <u>Facts</u>

The BLM lease requires Plaintiffs to "... gauge or otherwise measure all production, sales, or utilization of geothermal resource and shall record the same accurately in records as required by the [BLM]." AR 50. The metering of

---

[2] Since resolution of this issue does not turn on the plugging costs, the Court need not resolve this dispute.

geothermal resources is also governed by Department of the Interior Geothermal Resources Operation Order No. 7, which provides that "[a]ll meters and metering systems shall be maintained in acceptable working condition and shall be inspected, tested, and adjusted to meet appropriate design standards."

By decision on June 9, 1993, the BLM required Plaintiffs to install a new metering system meeting certain detailed specifications. AR 630-37. One of those specifications requires that "[a]ll broken, damaged, or malfunctioning equipment shall be replaced or repaired by the operator in a manner that will not affect the accuracy or operation of the equipment." AR 632, ¶ 3(e). The new metering system subsequently was installed by Plaintiffs and accepted by the BLM on February 1, 1994. AR 846-47.

    2.    <u>Discussion</u>

Plaintiffs argue that 43 C.F.R. 3263.1 requires the "quantity and quality of all production shall be determined in accordance with the standard practices, procedures, and specifications generally used in industry." They contend both the "standard practices, procedures, and specifications in the industry" as well as those used by the BLM in comparable situations are in dispute. For example, they maintain no other geothermal greenhouse is required to have a vortex flow meter

and cite testimony that the decision maker at the BLM admits no knowledge of "an industry standard."

In response, Defendants appear to concede that the meter is unusual but argue that Plaintiffs' operation is unique.  Moreover, Defendants maintain "[v]ortex flow meters have been used for thirty years, are not experimental and are widely used in other industrial settings."  (Defs.' Reply Supp. Defs.' Mot. Partial Summ. J. at 10).

Once again, the nature of the legal standard "procedures and specifications in the industry" augers against summary judgment when there is, as here, a factual dispute as to what is standard in the industry.  Defendants' motion for summary judgment on the issue of the appropriate metering system must be denied.

## **O R D E R**

Defendants' Motion to Dismiss Plaintiffs' claim as to the scope of Defendants' authority to order wells plugged is GRANTED as there is no such controversy pending.  Defendants' Motion for Partial Summary Judgment as to increased bond is DENIED in all other respects.

Dated at Albuquerque this 26th day of November, 1997.

                                                                          BRUCE D. BLACK
                                                                          United States District Judge

Counsel for Plaintiffs:
      Stephen E. Hosford
      Hubert & Hernandez
      Las Cruces, NM

Counsel for Defendants:
      John W. Zavitz
      Assistant U.S. Attorney
      Albuquerque, NM