**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**
_____

ROSETTE, INC., et al.,

      Plaintiffs,

v.                                                                             No. CIV 93-1379 BB/JHG

UNITED STATES OF AMERICA, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PARTIAL SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendants' motion for partial summary judgment, and the Court having read the briefs of counsel, FINDS the motion is well taken and should be GRANTED.

I.  Facts

In 1977, Burgett Investment, Inc.,[1] entered into a geothermal lease agreement with Thermal Power Associates, Inc. ("Thermal"). At that time, Thermal was the surface owner of certain land in the eastern half of Section 7 in Hidalgo County, New Mexico. Dale Burgett began construction of his first greenhouse on the land in 1978.

---

[1] Plaintiffs are all related corporations controlled by Dale Burgett or members of his immediate family and will be referred to collectively as either Burgett or Plaintiffs.

Later in 1978, the United States Government also offered the geothermal resources under Section 7 for lease.[2] Dale Burgett bid on the lease, but Amax Exploration, Inc. ("Amax"), was selected as the successful bidder. Dale Burgett then met with Government employees to discuss the manner of calculating royalties for his use of the geothermal energy under the Amax lease.[3]

Burgett Investment entered into an agreement with Amax to use the geothermal resources under Section 7 for commercial greenhouse purposes in December of 1978. Under the agreement, Burgett Investment was designated as an operator under the Amax lease. Burgett Investment agreed to make royalty payments in the amount and manner required by the Government under the lease, and specifically agreed to be "bound in the conduct of its operations by the terms and conditions of the federal lease to be issued AMAX." The lease was issued to Amax in 1979 and Burgett Investment was formally designated as an operator under the lease. The Amax lease has subsequently been assigned, but Burgett Investment has remained the primary operator.

---

[2] Plaintiffs presently have nine commercial greenhouses on this land.

[3] The lease was between Amax and the Bureau of Land Management. The operation of both the lease and operating agreement were supervised by the United States Geological Survey which became the Mineral Management Service. For ease of reference, these agencies will be referred to as the Government or the United States.

On December 10, 1986, Thermal filed a complaint of declaratory judgment, ejectment and quiet title action, No. CIV 86-1474-M, against Burgett Investment and the United States alleging, *inter alia*, Burgett Geothermal was making unauthorized use of the surface under the very geothermal lease now at issue in the present proceedings. Burgett Investment filed a motion to dismiss that action in January 1987, which asserted in part that Burgett was the successor in interest to the United States under the federal patent reservation. On July 22, 1988, Burgett Investment filed a further motion to dismiss for lack of jurisdiction or for summary judgment in which it stated as an uncontroverted fact that "[g]eothermal rights under the lease were originally issued by the United States as owner of the minerals. The defendant Burgett was designated as operator of said lease for the above described real property." In its memorandum in support of its motion, Burgett Investment also argued that it was through rights from the United States, Burgett Investment had the "right to enter and occupy so much of the surface as may be required for all purposes reasonably incident to the mining and removal of the mineral interests."

## II.  Legal and Procedural Standards

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Some courts have ruled that partial summary judgment is not available to dismiss an affirmative defense, and a Rule 12(f) motion to strike is the proper procedure. *See Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615 (D. Del. 1976) (The weight of authority and a close textual examination of the Rules convinces this Court that a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion and is not a proper motion under Rule 56(d)); *see also Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y. 1974). However, the more widely accepted position, and the one this Court will adopt is to allow a party to utilize Rule 56(d) to strike an affirmative defense. *See* 10B WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2737 at 321 (1998); *see also International Ship Repair & Marine Serv., Inc.*

*v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886 (M.D. Fla. 1996); *Koch Indus., Inc. v. United Gas Pipe Line Co.*, 700 F. Supp. 865, 867 (M.D. La. 1988) (allowing the utilization of summary judgment to dispose of affirmative defenses). As the Tenth Circuit stated in *Hunt v. Pick*, "[w]here multiple claims are made or multiple defenses are asserted the remedy [summary judgment] is proper if no genuine issue of fact exists relative to any one claim or defense that is determinative of part or all of the issues." *Hunt v. Pick*, 240 F.2d 782, 784 (10th Cir. 1957).

### III. The Merits

Plaintiffs' response to Defendants' motion for partial summary judgment as to the first affirmative defense raises three arguments: first, that enforcement of the lease provisions is inextricably bound up in the question of title; second, that Defendants cannot enforce the lease provisions due to the lack of privity; and third, that any leasehold interest held by Plaintiffs has merged into the surface estate.

Plaintiffs' first argument must be rejected for several reasons, all of which derive from the lease issued by the United States. Initially, it must be noted Plaintiffs have no basis to challenge the Government's title. Burgett is the operator under the Government lease. As long as he remains in undisturbed possession, a lessee is estopped to challenge the title of his landlord. *Eagle-Picher Lead Co. v. Fullerton*, 28

F.2d 472 (8th Cir. 1928), *cert. denied*, 279 U.S. 839 (1929); *Eagle Oil Co. v. Sinclair Prairie Oil Co.*, 24 F. Supp. 612 (N.D. Okla. 1938), *aff'd*, 105 F.2d 710 (10th Cir. 1939); *In re Modern Textile, Inc.*, 739 F.2d 308 (8th Cir. 1984). While Burgett is the operator and not the lessee per se, application of this doctrine would seem particularly appropriate in this case since the Plaintiffs have repeatedly gone on record as tracing their right to operate and extract benefit from the geothermal wells to the title of the United States.

Second, the Government has not brought an action to quiet title to the geothermal resources covered by the lease or to eject Plaintiffs from the leasehold. Rather, the United States merely seeks to enforce the terms of its lease. Both the Tenth Circuit and this Court have previously found that Plaintiffs agreed to be bound by the lease under the operating agreement signed by Plaintiffs. *See Rosette, Inc. v. United States*, 141 F.3d 1394, 1397-98 (10th Cir. 1998); *see also* Mem. Op., filed Apr. 10, 1996, at 2. Thus, title is not an issue under the Government's counterclaim.

The amended counterclaim seeks only two remaining items of relief: 1) to recover unpaid royalties on the geothermal resources, and 2) to direct Plaintiffs to maintain the meter in fully operable condition. These two items arise out of the express requirements of the lease and do not involve any question of title. The lease provides

for the payment of a "royalty of 10 percent on the amount or value of steam, or any other form of heat or other associated energy produced, processed, removed, sold, or utilized from this lease." AR at 52. The lease also requires Plaintiffs to "gauge or otherwise measure all production, sales, or utilization of geothermal resource and shall record the same accurately in records as required by the [BLM]." AR at 50. Without regard to title to the mineral estate, as the operator under the Government lease, Burgett agreed to make royalty payments in the amount and manner as required under the lease, and specifically agreed to be "bound in the conduct of its operations by the terms and conditions of the federal lease to be issued AMAX." AR at 44-45. Thus, whether legal title is vested in the United States is not material to whether Burgett is bound by the terms of its own agreements.

Plaintiffs' argument on privity is also not well founded since it is again the lease, not legal title, which is the focus of this case. Since Plaintiffs are the lessee's agent for purposes of the lease and regulations, Plaintiffs' arguments about privity make little sense. Even if Burgett was not the lessee's agent for purposes of the lease, however, the provisions of the agreement between Plaintiffs and the lessee were also incorporated by reference into the designation of operator documents. AR at 69. Finally, the United States is clearly an intended beneficiary of the language in the agreement between Plaintiffs and the lessee requiring payment of royalties and compliance with lease terms.

The Government is therefore entitled to demand compliance with those terms. *Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir.), *cert. denied*, 363 U.S. 812 (1960); *Hamill v. Maryland Cas. Co.*, 209 F.2d 338 (10th Cir. 1954); *Leyba v. Whitley*, 907 P.2d 172 (N.M. 1995). If this were not so, the Plaintiffs as operator could forfeit the very interest of the lessees from which they derive the right to operate.

With respect to the third argument, no merger of the mineral and surface estate occurred when Plaintiff acquired the surface interest in 1988. Private parties cannot effect the rights of the United States in public lands by agreement among themselves. *See, e.g., Ross Explorations, Inc. v. Wilson*, 946 F.2d 594 (8th Cir. 1991); *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984); *River Gas Corp. v. Pullman*, 960 F. Supp. 264 (D. Utah 1997). Furthermore, the assertion of merger by Plaintiff is merely another attempt to raise the title claim that both this Court and the Tenth Circuit have already found barred by the statute of limitations. The decision that such a claim is time barred by the statute of limitations is now the law of the case. *Rosette, Inc. v. United States*, 141 F.3d at 1398.

**O R D E R**

For the above stated reasons, Defendants' motion for partial summary judgment [#100] is **GRANTED**.

Dated at Albuquerque this 8th day of October, 1998.

                                      **BRUCE D. BLACK**
                                      United States District Judge

Counsel for Plaintiffs:
    Stephen E. Hosford, Hubert & Hernandez, Las Cruces, NM

Counsel for Defendants:
    John W. Zavitz, AUSA, Albuquerque, NM