# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ROSETTE, INC., et al.,**

    Plaintiffs,

v.                                               No. CIV 93-1379 BB/JHG

**UNITED STATES OF AMERICA, et al.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant/Counter-Plaintiff's Motion for Summary Judgment (Doc. 125) on its Second Amended Counterclaim (Doc. 122), filed February 12, 1999. This is an action by the United States against Plaintiffs to enjoin Plaintiffs from utilizing or attempting to utilize in any manner certain geothermal resources within the lands covered by a BLM geothermal lease.

**Facts**

Plaintiff Rosette, Inc., (hereinafter "Rosette" or Plaintiffs) owns the surface estate to certain real property in Section 7, Township 25 South, Range 19 West, Hidalgo County, New Mexico ("Section 7"). Plaintiffs trace their title to patents from the United States, issued under the Stock-Raising Homestead Act ("SRHA") enacted December 29, 1916. 42 U.S.C. §§ 299, 301 (1994); Law of Mar. 4, 1923, ch. 245, § 2, 42 Stat. 1445 (repealed 1976); Law of Dec. 29, 1916, ch. 9, §§ 1-8, 10, 39 Stat. 862-64, 65 (repealed 1976). Under these patents, the primary Defendant, the United States of America (hereinafter "the Government" or Defendant), reserved

1

"all the coal and other minerals in the land so entered and patented, together with the right to prospect for, mine, and remove same pursuant to the provisions and limitations of the Act of December 29, 1916."

Several wells were drilled in the eastern half of Section 7 in the late 1940s and early 1950s. Water as hot as 240° Fahrenheit was encountered during this drilling. In 1970, Congress enacted the Geothermal Steam Act, 30 U.S.C. § 1001-1028 (1994). This Act granted the Secretary of the Interior authority to lease geothermal resources owned or reserved by the United States.

Plaintiffs are a collection of related corporations controlled by Dale Burgett or members of his immediate family. In 1977, Burgett Investment, Inc., entered into a geothermal lease agreement with Thermal Power Associates, Inc. ("Thermal"). At that time, Thermal was the surface owner of certain land in the eastern half of Section 7. Dale Burgett constructed his first greenhouse on Section 7 in 1978. Also in 1978, the Government offered the geothermal resources under Section 7 pursuant to a Geothermal Resource Lease. Dale Burgett bid on the lease, but Amax Exploration, Inc. ("Amax"), was selected as the successful bidder. Dale Burgett then met with Government employees to discuss the manner of calculating royalties for his use of the geothermal energy under the Amax lease.

In December of 1978, Burgett Investment, Inc., entered into an agreement with Amax to use the geothermal resources under Section 7 for commercial greenhouse purposes. Under the agreement, Burgett Investment, Inc., was designated as an operator under the Amax lease. Burgett agreed to make royalty payments in the amount and manner required by the Government under the lease, and specifically agreed to be "... bound in the conduct of its operations by the

2

terms and conditions of the federal lease to be issued AMAX ...." The lease was issued to Amax in 1979 and Burgett Investment, Inc., was formally designated as an operator under the lease. The Amax lease has been subsequently assigned but Burgett Investment, Inc., has remained the primary operator. Plaintiffs presently have nine commercial greenhouses on Section 7. The geothermal wells used by Plaintiffs to heat the greenhouses are all located in the eastern half of Section 7. The irrigation wells used by Plaintiffs are separate and located outside Section 7.

In 1993, Rosette filed suit against the United States claiming that geothermal resources are not reserved minerals under the SRHA, and, therefore, that the United States lacks the authority to regulate them. The complaint was styled as one for quiet title, ejectment, declaratory judgment, and permanent injunction. In 1996, this Court dismissed Plaintiffs' claims on statute of limitations grounds. (Mem. Op. and Ord. dated Oct. 10, 1996.) Plaintiffs appealed, and the Tenth Circuit affirmed. <u>Rosette, Inc. v. United States</u>, 141 F.3d 1394 (10th Cir. 1998). The Government's current motion requires this Court to now consider ownership of the geothermal resources.

**<u>Standard For Summary Judgment</u>**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F. 2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U. S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with

evidence showing that there is a genuine issue of material fact. <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of their pleadings. <u>Id.</u> The Court will consider the motion for summary judgment in light of these standards.

**Discussion**

In December 1998, Defendant filed the Second Amended Counterclaim for preliminary and permanent injunction and damages. Defendant sets forth the basis of the dispute in the following terms:

> 7. By willfully attempting to use the geothermal resources deeper than 1000 feet without authority from the United States and the lessee, Plaintiffs have committed or are now committing a trespass upon the property of the United States.
>
> 8. Plaintiffs should be liable to the United States for any damages are [sic] incurred due to the trespass, including the cost of recapping and plugging the well.

(Doc. 122). In a Cross Motion for Summary Judgment, Rosette offers as an affirmative defense that by virtue of Rosette's patents giving Plaintiffs ownership of the surface lands described in their complaint, Rosette owns and has title to the disputed resources. (Doc. 124).

Beneath the land owned by Plaintiffs are sources of geothermal steam that travel through wells to heat Plaintiffs' greenhouses. The surface lands were patented under the SRHA. All patents issued under the Act are "subject to and contain a reservation to the United States of all the coal *and other minerals* in the lands so entered and patented, together with the right to prospect for, mine, and remove the same." 43 U.S.C. § 299 (emphasis added). Section 299 further provides that "[t]he coal and mineral deposits in such lands shall be subject to disposal by the United States in accordance with the provisions of the coal and mineral land laws in force at

4

the time of such disposal." Id. The patents issued on the lands in Section 7 contain a reservation conforming to the words of the statute.[1] The issue at the heart of this case is whether the right to use geothermal as a heat source for the greenhouses passed to Plaintiffs or was retained by the United States under this reservation, *i.e.*, is geothermal reserved as an "other mineral." This Court finds that pursuant to the SRHA, the geothermal resources located under the patented land are retained by the United States.

The language of the SRHA contains no specific reference to geothermal resources. This is hardly surprising as this Act was passed by Congress in 1916. Since that time, vast technological advances have made it possible to locate and develop resources, like geothermal, that were inconceivable in 1916. However, the question is not whether given what modern science has uncovered about the nature of geothermal steam it makes sense to regard it as part of the surface water, but how Congress would have viewed the issue in 1916. See Amoco Prod. Co. v. Southern Ute Indian Tribe, 119 S. Ct. 1719, 1724 (1999). This determination turns on whether Congress intended the statute to be read broadly, thus incorporating geothermal as a mineral in the Act, or narrowly, excluding geothermal as a mineral because it is not specifically reserved by name in the statute. In Amoco, the Supreme Court used the SRHA as an illustration of a broad mineral reservation. The issue in Amoco was whether in applying the Coal Lands Act of 1909 and 1910, the "coal" reserved by the Government included the methane gas trapped within the coal beds. Writing for the Court, Justice Kennedy contrasted the narrow reservation of "coal in those statutes with the broad reservation of "all the coal and other minerals" in the SRHA saying:

---

[1] The patents contain the following reservation: "...all the coal and other minerals in the land so entered and patented, together with the right to prospect for, mine and remove same pursuant to provisions and limitations of the Act of December 29, 1916."

5

The limited nature of the 1909 and 1910 Act reservations is confirmed by subsequent congressional enactments. When Congress wanted to reserve gas rights that might yield valuable fuel, it did so in explicit terms. In 1912, for example, Congress enacted a statute that reserved "oil and gas" in Utah lands. Act of Aug. 24, 1912, 37 Stat. 496. In addition, both the 1912 Act and a later Act passed in 1914 continued the tradition begun in the 1909 and 1910 Acts of reserving only those minerals enumerated in the statute. See ibid.; Act of July 17, 1914, 38 Stat. 509, as amended, 30 U.S.C. §§ 121-123 (providing that "lands withdrawn or classified as phosphate, nitrate, potash, oil, gas or asphaltic minerals, or which are valuable for those deposits" could be patented, subject to a reservation to the United States of "the deposits on account of which the lands so patented were withdrawn or classified or reported as valuable"). It was not until 1916 that Congress passed a public lands act containing a general reservation of valuable minerals in the lands. See Stock-Raising Homestead Act, ch. 9, 39 Stat. 862, as amended, 43 U.S.C. § 299 (reserving "all the coal and other minerals in the lands" in all lands patented under the Act). (Citation omitted.)

119 S. Ct. at 1726.

In 1986, the Supreme Court specifically addressed the reach of the SRHA in response to a question of whether gravel found on patented lands under the Act is a reserved mineral. Watt v. Western Nuclear, Inc., 462 U.S. 36 (1983). Deciding that the scope of the mineral reservation was broad enough to include gravel, the Supreme Court considered the goal of the SRHA:

> In resolving the ambiguity in the language of the SRHA, we decline to construe that language so as to produce a result at odds with the purposes underlying the statute. Instead, we interpret the language of the statute in a way that will further Congress' overriding objective of facilitating *the concurrent development of surface and subsurface resources*.

Id. at 56 (emphasis added). Plaintiffs, then, must overcome what the Supreme Court has already recognized as a basic objective of the SRHA; separation of the surface and the subsurface resources. This objective opened the surface for immediate agricultural use while preserving whatever mineral potential lay buried in the subsurface for later development.[2]

---

[2] There is also substantial Tenth Circuit authority interpreting similar statutory mineral reservations in favor of reserving the mineral estate in the United States. See Exxon Corp. v.

6

In 1977, the Ninth Circuit Court of Appeals also interpreted the SRHA reservation broadly in a case virtually identical to that at bar. United States v. Union Oil Co. of Cal., 549 F.2d 1271 (9th Cir.) cert. denied, 434 U.S. 930, 98 S. Ct. 418 (1977). In Union Oil, the United States brought a quite title action under the Geothermal Steam Act of 1970 to determine whether the mineral reservation in patents issued under the SRHA reserved to the United States geothermal resources underlying the patented lands. Id. The Ninth Circuit engaged in a thoughtful and thorough analysis of the SRHA's background, language, and legislative history to determine whether the words of the mineral reservation in the Act encompass geothermal resources. Id. The Ninth Circuit observed that there was, of course, no specific reference to geothermal steam and associated resources in the language of the SRHA or in its legislative history, since Congress was not aware of geothermal power at the time of enactment in 1916. Id. at 1273. The Court determined that the mineral reservation clause of the Act was to be read broadly to include geothermal in light of Congress' "dual purpose" in enacting the SRHA. Id. at 1274. This "dual purpose" includes on the one hand the agricultural purpose of the grant itself, and on the other, Congress' intent to retain subsurface resources, particularly sources of energy,

---

Lujan, 970 F.2d 757 (10th Cir. 1992) (carbon dioxide deposits included in reservation of "gas" in the Agricultural Entry Act of 1914, 30 U.S.C. §§ 121-125.); Aulston v. United States, 915 F.2d 584 (10th Cir. 1990) (same); Brennan v. Udall, 379 F.2d 803 (10th Cir. 1967) (oil shale included in reservation of "oil" in the Agricultural Entry Act of 1914, 30 U.S.C. §§ 121-125); see also Spurlock v. Santa Fe Pacific R. Co., 694 P.2d 299 (Ariz. App. 1984) (reservation of "all minerals whatsoever" retains ownership of all commercially valuable substances separate from the soil). Interpreting the SRHA to recognize Government retention of minerals beyond coal is also consistent with earlier Tenth Circuit precedent holding the grantor reserves ownership of minerals unknown at the time of the conveyance. Northern Natural Gas Co. v. Grounds, 441 F.2d 704 (10th Cir.), cert. denied, 404 U.S. 951 (1971); cf. New Mexico & Arizona Land Company v. Elkins, 137 F. Supp. 767 (D.N.M.), app. dismissed, 239 F.2d 645 (10th Cir. 1956) (immaterial whether the parties knew of the existence of mineral at the time of the reservation).

for separate disposition and development in the public interest. Id.; see also, H. Rep. No. 103-44, at 5 (1993), reprinted in 1993 U.S.C.C.A.N. 92, 93 (describing the "split-estate" arrangement between surface and subsurface resources).

The Ninth Circuit's interpretation of the SRHA in Union Oil is further supported by 1993 congressional amendments to that Act. SRHA Amendments, Pub. L. 103-23, § 1(a) (1993) (current version at 43 U.S.C. § 299(p) (Supp. 1998)). The purpose of the amendments was to "ensure that surface owners of lands patented under that Act have a say in the conduct of mining activities which may occur on their property." H. Rep. No. 103-44, at 5 (1993), reprinted in 1993 U.S.C.C.A.N. 92. Congress also specifically enumerated that the amended provisions designed to protect the rights of surface owners only apply to minerals not subject to disposition under the Geothermal Steam Act of 1970, 30 U.S.C. § 1001-1025 (Supp. 1998). 43 U.S.C. § 299(p). This would appear to be at least implicit recognition that the mineral reservation in the SRHA includes geothermal resources.

Adhering to the basic principles outlined in Amoco and Watt, this Court will adopt the Ninth Circuit's analysis of the SRHA in Union Oil and conclude that "[t]he purposes of the Act will be served by including geothermal resources in the statute's reservation of 'all the coal and other minerals.' Since the words employed are broad enough to encompass this result, the Act should be so interpreted." 549 F.2d at 1279.

Plaintiffs make several arguments in an attempt to avoid the above result. They contend the hot water from Well 55-7 is part of its surface estate conveyed under its SRHA patents. Plaintiffs further argue their title is superior to any title claimed by the United States as a result of its mineral reservation in those patents, and therefore the United States' claim of trespass is

8

without merit. (Doc. 127 at 1.) Additionally, Plaintiffs assert they have a prior vested state property right in the water, as well as a valid existing right to utilize the hot water under the Federal Land Policy Management Act, 43 U.S.C. § 1701 et seq. (Id. at 2.) Finally, Plaintiffs contend their existing water rights cannot be subsequently impaired by application of the Geothermal Steam Act.

As an initial matter, Plaintiffs' current position that they, and not the United States, own the geothermal resources under the patent reservation must be considered in light of the fact that it is completely contrary to the arguments they presented in previous litigation before this Court.[3] Nevertheless, the Court will address the arguments Plaintiffs now present in their Cross Motion for Summary Judgment.

Plaintiffs accept that the SRHA has a statutory mineral reservation for subsurface resources, but argue that what Rosette is using to heat the greenhouses is simply "hot water" and

---

[3] In 1986, Thermal sued the United States, Plaintiff Burgett Investment, Inc., and others in this Court. Thermal v. United States, No. CIV 86-1474 HB. The action sought to determine rights between the surface owner of a portion of Section 7, Thermal, the United States as mineral owner, and Burgett Investment, Inc., as operator under the Amax geothermal lease issued by the Government. Plaintiff Burgett Investment, Inc., filed a motion to dismiss in that action. Therein, Burgett Investment, Inc., asserted that it was the successor in interest to the United States pursuant to its reservation of rights under the SRHA, 43 U.S.C. § 291 et seq. On July 19, 1988, Dale Burgett filed an affidavit in support of Burgett Investment's motion to dismiss for lack of jurisdiction or for summary judgment. In that affidavit, he asserted Thermal Power Associates, Inc., had no right to charge for geothermal rights it did not own. In the memorandum in support of that motion, Burgett Investment, Inc., argued:

> Through the reservation of rights from the U.S., Burgett has the right to enter and occupy so much of the service as may be required for all purposes reasonably incident to the mining and removal of the mineral interests. Thermal Power has no right to extract the geothermal mineral from the property which was reserved by the United States. Burgett does have this right, under the Stock Raising Homestead Act 43 USC [sic] section 291 et seq.

9

is not a reserved "mineral" under the Act. This "hot water," the argument goes, is put to proper use on agricultural products pursuant to the SRHA.[4] This argument is based on two principles of physics from which, Plaintiffs argue, conclusions logically derive. The first premise is that a geothermal resource is nothing more than hot water which is used to generate electricity. Without its use or potential use generating electricity, hot water ceases to be a geothermal product and thus legally follows other water rights. Plaintiffs explain:

> Heat, theoretically, can be removed from soil. However, in this instance, it is being removed from water. The water itself is clearly part of Rosettes [sic] surface estate.
>
> Heat can be used for commercial purposes. However in this instance, it is also utilized for agricultural purposes, consistent with the purposes of the SRHA. And critical in this instance, the heat is not severed from the surface estate and sold as an independent energy form, such as electricity.

(Doc. 128 at 8.)

The Court believes Plaintiffs' argument fails as it misapplies the Geothermal Steam Act of 1970 and is based on an erroneous conception of the nature of a geothermal resource. Despite Plaintiffs' contention, it is clear that the Geothermal Steam Act is not limited to only geothermal products that generate electricity. See R&R Energies v. Mother Earth Indus., Inc., 936 P.2d 1068, 1075 (Utah 1997) (experts recognize geothermal energy cannot be equated with electrical power output but is rather itself energy that comes from the heat of the earth). Moreover, while it

---

[4] Under the SRHA, the Secretary of Interior was authorized to designate as stock-raising lands "the surface of which is, in his opinion, chiefly valuable for grazing and raising forage crops ...." 43 U.S.C. § 292 (repealed by Act of Oct. 21, 1976, Pub.L. No. 94-579, 90 Stat. 2787). Plaintiffs' product can hardly be described as a forage crop. See, e.g., 40 C.F.R. Pt. 158, App. A. (1999) (forage crop includes: annual and perennial grasses, corn and sorghum, small grains for forage, perennial legumes); 7 C.F.R. § 1439.3 (1999) (seed small grain forage crops means wheat, barley, oats, rye, and triticale).

10

is apparent from the legislative history of the Geothermal Steam Act that Congress was primarily concerned with use of geothermal resources to generate electricity, See H.R. Rep. No. 91-1544, (1970), reprinted in 1970 U.S.C.C.A.N. 5113 et seq,[5] there is no evidence that Congress intended to limit the broad language of that statute.[6] The relevant portion of the Act reads:

> (c) "geothermal steam and associated geothermal resources" means (i) all products of geothermal processes, *embracing indigenous steam, hot water* and hot brines; (ii) steam and other gases, hot water and hot brines resulting from water, gas or other fluids artificially introduced into geothermal formations; (iii) *heat or other associated energy found in geothermal formations*; and (iv) any byproduct derived from them.

30 U.S.C. § 1001 (emphasis added).

Plaintiffs offer no clearly expressed legislative intention contrary to the clear language of § 1001(c). Consumer Prod. Safety Comm'n, 447 U.S. at 108. Plaintiffs do, however, cite certain Department of the Interior Opinions endorsing their position that geothermal steam is nothing more than water at a very high temperature, and thereby not subject to the mineral reservation of the SRHA. (Doc. 127 at 9). In a House Report, Congress specifically addressed the Department's position stating,

> The committee is aware that the Department of the Interior has expressed the view that geothermal steam is not subject to the mineral reservation of the [SRHA]. The committee is also aware that a contrary view has been expressed. As the opinion of

---

[5] The relevant portion of House Report No. 91-1544 states, "[g]eothermal power is, literally, earth-heat-energy. The development of geothermal steam and associated geothermal resources involves the harnessing of the natural heat energy of the earth for the generation of electric power ...."  1970 U.S.C.C.A.N. at 5113-14.

[6] A "familiar canon of statutory construction is that the starting point for interpreting a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); see also Owen v. Magaw, 122 F.3d 1350, 1354 n.1 (10th Cir. 1997).

the Department is not a conclusive determination of the legal question, it was the sense of the committee that an early judicial determination of this question (upon which the committee takes no position) is necessary.

1970 U.S.C.C.A.N. at 5119; see also Union Oil, 549 F.2d at 1279 (discussion of same administrative interpretation).[7] In any event, the Ninth Circuit has now made the judicial determination sought by the Committee and it is not in Plaintiffs' favor.

Plaintiffs take their argument a step further arguing that the water they utilized is not even hot enough for commercially practicable generation of electricity. Whether this is a disputed issue between the parties is irrelevant to the Court's discussion, because, as was just stated, the ability of water to generate electricity is not a requirement for application of the Geothermal Steam Act. Although Plaintiffs cite to statutes from other states that include a energy generating requirement, it is clear that New Mexico does not have such a requirement for geothermal resources. See NMSA 1978, § 19-13-2 (1994) ("geothermal resources means the natural heat of the earth, or the energy, in whatever form, below the surface of the earth present in, resulting from or created by, or which may be extracted from, this natural heat").

Plaintiffs' second premise is but a variation on the first. They contend that their existing water rights attach to the surface property and reach down to the subsurface resource, thus preempting the Geothermal Steam Act. A characteristic of geothermal resources, setting them

---

[7] As additional support that Plaintiffs' hot water was not intended to be reserved to the United States under the SRHA, Plaintiffs cite Occidental Geothermal, Inc. v. Simmons, 543 F. Supp. 870 (1982). Plaintiffs' citation of this case seems somewhat incongruous as it contains several holdings supporting Defendant's position. See id. at 876. Nonetheless, the Court believes Plaintiffs reliance is misplaced. Occidental discusses whether the Geothermal Steam Act authorized the right to build and operate power plants on the surface of the property which was subject to reservation of a geothermal resource. The case at bar involves the separate question of whether the United States reserved the geothermal resource.

12

apart from other mineral resources, is that a major component is water in either liquid or gaseous form. See Ruth Musgrave Silver and Stephen P. Comeau, Comment, Geothermal Energy: Problems and Shortcomings of Classification of a Unique Resource – A Look at Problems With Water Law, With Particular Emphasis on New Mexico, 19 Nat. Res. L. J. 445 (1979). Plaintiffs reason that because the major component of geothermal resource is water, that geothermal water is included in their various vested water rights.

      The problem with this argument is that it fails to make the distinction between using underground water to irrigate roses and using the heat contained in the water to warm a greenhouse. Plaintiffs continue to ignore the fact that more than just water is involved in producing the geothermal product. Geothermal energy is defined as the production of the earth's heat energy by magma or molten rock that intrudes into the earth's crust. The water contained in the porous rock is then heated to extreme temperatures and as it rises to the surface, produces steam. See Ethel R. Alston, Annotation, Construction and Application of Geothermal Steam Act of 1970 (30 U.S.C.A. §§ 1001 et seq.) Pertaining to Leases of Government Lands for Development of Geothermal Steam Resources, 40 A.L.R. Fed 814 § 2[a] (1978). The question therefore is not merely a determination of water rights, but includes the issue of whether the SRHA reserves this geothermal heating process as a "mineral." The geothermal resource at issue in this case is used to heat greenhouses not irrigate roses. There is a clear use of the resource in the form of "hot water" and/or "heat or other associated energy found in geothermal formations." Simply put, even Plaintiffs' use of the "hot water" clearly conforms more closely to use as an energy source than it does as a source of water for agriculture.

In Union Oil, the Ninth Circuit specifically addressed whether the ownership of water rights should be deemed to include geothermal resources, concluding:

> [A] patentee under the Stock- Raising Homestead Act receives title to all rights in the land not reserved. It does mean, however, that the mineral reservation is to be read broadly in light of the agricultural purpose of the grant itself, and in light of Congress's equally clear purpose to retain subsurface resources, particularly sources of energy, for separate disposition and development in the public interest. Geothermal resources contribute nothing to the capacity of the surface estate to sustain livestock. They are depletable subsurface reservoirs of energy, akin to deposits of coal and oil, which it was the particular objective of the reservation clause to retain in public ownership.

529 F.2d at 1279.

It is not dispositive that the Plaintiffs' predecessors in interest put the leased water to beneficial use for ranching purposes. Despite Plaintiffs' arguments, such use does not perfect a claim to the entire subsurface mineral estate. The difference between the energy in the geothermal resource and the water by which the energy is conveyed, was recognized by the Colorado Supreme Court in United States v. City and County of Denver, 656 P.2d 1 (Colo. 1982) (en banc). The Colorado Court found the United States was entitled to a state water right in unappropriated water in connection with hot springs withdrawn pursuant to the Pickett Act, 43 U.S.C. § 141. However, that Court held such a water right did not give the federal government the right to make use of the water in the hot springs for geothermal power production under the Geothermal Steam Act, 30, U.S.C. § 1001 et seq., saying, "[w]e conclude that the Geothermal Steam Act of 1970 provides for the leasing of federal lands for geothermal energy production. We do not find that any reservation of water was implied by Congress or is necessary to accomplish the purposes of the Act." Id. at 34.

14

The Court also disagrees with Plaintiffs' position that the use of the geothermal resource falls within their estate recognized under the Homestead Act. (Doc. 127 at 19). Plaintiffs rely on a footnote in Watt, which raises the question whether the owner of the surface estate may use a reserved mineral to the extent necessary to carry out ranching and farming activities successfully. 462 U.S. at 54 n. 14. In that footnote, the Supreme Court reasons by analogy to Shiver v. United States, 159 U.S. 491 (1895), in which the Court recognized that an entryman under the homestead laws had the right to cut timber necessary to establish a homestead, notwithstanding a federal statute making it a crime to cut timber on the lands of the United States. This Court finds no analogy to Shiver. The present case involves the surface estate owners' desired use of reserved resources to operate large scale commercial greenhouses for growing roses. Unlike Shiver, then, the present case does not involve an incidental use of a minor portion of the reserved resource to advance the homestead purpose.[8] Rather, Plaintiffs have admitted the only reason they would "homestead" on this particular parcel is because of its access to the reserved geothermal resource.

Rosette also argues that BLM Geothermal Lease No. NM 34790 grants the right to use potable water wells free of cost. However, it is the Court's understanding that the issue that gives rise to this action is Rosette's improper use of Well 55-7 below 1,000 feet. (Doc. 122 at 2). Plaintiffs admit that their agreement with Amax gave them no right to drill a well deeper than 1,000 feet without prior written consent. In addition, Plaintiffs admit that their decision to drill below 1,000 feet was made without permission from either the lessee or the United States. (Doc.

---

[8] See also Amoco Prod. Co., 119 S. Ct. at 1727 ("The right to dissipate the CBM [coal bed methane] gas where reasonable and necessary to mine the coal does not, however, imply ownership of the gas in the first instance.").

15

124 at 2). Plaintiffs cannot now assert a right under the lease to remove resources in a way that violates the very lease from which their alleged right derives. Finally, the lease provision permitting the lessee to use wells for potable water for lease related purposes cannot fairly be read to include free use of the heat from geothermal wells. Once again, the distinction between potable water and the heat it transports is critical.

Conclusion

Legal precedent from the Tenth Circuit, as well as the Supreme Court, supports a broad interpretation of the mineral reservation contained in the SRHA. To read it narrowly would not only do violence to the Watt principles of the construction of mineral reservations, it would also contravene the well reasoned and thoughtful opinion in Union Oil. Further, it would bestow a windfall on Burgett who understood from the beginning his geothermal rights derived from the federal lease. This is exactly the result Congress was trying to avoid in creating the mineral reservation in the SRHA. Therefore, the language of the statutory mineral reservation to the Government in the SRHA is found to include geothermal steam and associate geothermal resources. The mineral reservations placed on Plaintiffs' land grants under the SRHA are therefore effective to reserve to the United States geothermal resource as an "other mineral in the lands so entered and patented" by Plaintiffs.

**ORDER**

For the reasons stated above, this Court finds that title to the geothermal resource in question is vested in the United States as a matter of law under the patent reservation in the deed issued to Rosette's predecessor in interest under the Stock-Raising Homestead Act of December 19, 1916.

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 125) be, and hereby is, **GRANTED**.

**FURTHER, IT IS ORDERED** that Plaintiffs' Cross Motion for Summary Judgment (Doc. 127) is **DENIED**.

**FURTHER THE COURT ORDERS**:

1. A preliminary and permanent injunction prohibiting Plaintiffs from utilizing or attempting to utilize in any manner geothermal resources located deeper than 1,000 feet within the lands covered by BLM Geothermal Lease No. NM 34790 without authorization from the United States and the lessee under the Lease; and

2. A preliminary and permanent injunction ordering Plaintiffs to remove the pump from and to recap Well 55-7, but prohibiting Plaintiffs from further disturbing Well 55-7.

The damages portion of the claim was not sufficiently presented to the Court for consideration, so the Court will reserve judgment on that issue pending further pleadings by the parties.

Dated at Albuquerque this 15th day of September, 1999.

BRUCE D. BLACK
United States District Judge

Counsel for Plaintiffs:
    Stephen E. Hosford, Steven L. Hernandez, Hubert & Hernandez, Las Cruces, NM
Counsel for Defendants:
    John W. Zavitz, Assistant U.S. Attorney, Albuquerque, NM